IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bernard W. Ebersole and Jennifer : 
Matlack, : 
                Petitioners : 
         : 
        v. :    No. 360 F.R. 2020
         :    Submitted: April 28, 2023
Commonwealth of Pennsylvania, : 
                Respondent : 

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT            FILED: October 10, 2023

       Bernard W. Ebersole and Jennifer Matlack (Grantors) petition for review of a determination of the Board of Finance and Revenue that assessed a realty transfer tax on their conveyance of three parcels of real property to the trust they created as part of their estate plan. The Board of Finance and Revenue held that these transfers did not qualify for a tax exemption because the trust authorized distributions to persons other than a Grantor, in the event that one of the Grantors should become incapacitated. Grantors assert that the deletion of this contingency provision from the trust, retroactive to a date prior to the real estate transfers, rendered the transfers tax exempt.

       On September 4, 2018, Grantors, who are husband and wife, created the "The Bernard W. Ebersole, III and Jennifer J. Matlack Living Trust" (Trust)

dated September 4, 2018. Joint Stipulation of Facts ¶2.[1] Grantors' Trust states that it is a "*revocable living trust . . .* with the intent that assets transferred to the trust be held *for our benefit while we are living*, and for the benefit of our beneficiaries after our death[.]" *Id*., Exhibit A, §1.03 (emphasis added). Those remaindermen beneficiaries are the couple's three children. *Id*., Exhibit A, Articles Two and Eleven. During their lifetimes, Grantors are entitled to a quarterly distribution of "net income" and a distribution of principal for their "unrestricted use," "as directed by either of us individually or by both of us jointly." *Id*., Exhibit A, §1.05(d). Also on September 4, 2018, Grantors executed a last will and testament providing that upon their deaths, their estates will be distributed in accordance with the terms of the Trust. *Id*., Exhibits B (Ebersole Will) and C (Matlack Will).

On January 10, 2019, Grantors transferred three parcels of real property to the Trust. With the recording of each deed, Grantors filed a Statement of Value showing a "transfer to a trust" for cash compensation of $10.00. Joint Stipulation, Exhibits D, E, and F. Each Statement claimed an exemption equal to the "computed value"[2] of the property by checking the box for "Transfer to a trust." *Id.* Each Statement of Value had a copy of the Trust attached thereto.

On August 8, 2019, the Pennsylvania Department of Revenue (Department) issued three Notices of Assessment. Joint Stipulation, Exhibits G, H, and I. The Notices assessed a transfer tax on each of the three parcels transferred to the Trust by Grantors. The Notices calculated the amount owed as of July 6, 2019, as follows:

---

[1] The facts are not in dispute having been established by a Joint Stipulation of Facts (Joint Stipulation) of the parties, which includes such relevant documents as the Trust instrument, as amended, deeds, and a court order.

[2] The "computed value" was calculated by multiplying the county assessed value by the common level ratio. *See* Joint Stipulation, Exhibits D, E, and F.

> (1) 160 Hunters Circle - $18,669.67
>
> (2) 208-210 North Chester Road - $15,913.11
>
> (3) 1461 Conifer Drive - $5,411.88.

*Id*. This assessment included interest and recording fees. Each Notice set forth the basis for the assessment as follows:

> 3. The Transfer did not qualify for exclusion from payment of the tax:
>> c) One or more of the possible/contingent beneficiaries disqualified the transfer as an excludable transaction.
>
> 99. Does not qualify as a living trust.

*Id*.

On October 7, 2019, Grantors amended the Trust, effective September 4, 2018. Joint Stipulation, Exhibit J ("1st Amendment by Grantors"). This amendment revised Article Five of the Trust, entitled "Administration of Our Trust during a Grantor's Incapacity." *Id*., Exhibit A, §§5.01-5.03. The amendment eliminated the power of the Trustee to make a distribution for the health, education, and maintenance of a "dependent [of] the incapacitated Grantor for support." *Id*., Exhibit A, §5.03(c); *Compare* Exhibit J, §5.03(c). It also eliminated the power of the Trustee to make gifts, charitable or educational, on behalf of the incapacitated Grantor. *Id*., Exhibit A, §5.03(c), (e)(1)-(9); *Compare* Exhibit J, §5.03(c), (e). Finally, the amendment added a provision stating that no distributions from the Trust "shall ever be made to any person who would fail to meet the requirements necessary to exclude the transfer of real estate to this Trust from taxation under . . . the Pennsylvania Realty Transfer Tax Act."[3] *Id*., Exhibit J, §16.26.

---

[3] *See infra* note 12 for official citation and history of this statute.

On October 10, 2019, Grantors filed petitions for a tax assessment redetermination with the Department's Board of Appeals.[4] On October 17, 2019, the Board of Appeals denied Grantors' petitions, reasoning that the Trust did not meet the definition of a "living trust" because there was a possibility that the Trustee could make distributions to a person other than Grantors, should one of them become incapacitated. The Board of Appeals found the amendment deleting this provision from the Trust to be irrelevant. Grantors appealed to the Board of Finance and Revenue.

On December 13, 2019, Grantors filed a petition with the Chester County Court of Common Pleas to modify the Trust to inception. On December 20, 2019, the court entered an order modifying the Trust to conform to the "Amendment by Grantors Dated October 7, 2019, and such modification is made retroactive to September 4, 2018." Court of Common Pleas, Chester County, Order, No. 2019-2490, December 20, 2019; Joint Stipulation, Exhibit K.

On June 5, 2020, the Board of Finance and Revenue denied Grantors' challenge to the Department's realty transfer tax assessment, holding that the Trust did not meet the definition of a living trust, notwithstanding the above-referenced modification ordered by the court. Grantors then petitioned for this Court's review.

On appeal,[5] Grantors argue that the Board of Finance and Revenue erred in holding that their real property transfers to the Trust were taxable. Transfers

---

[4] The Board of Appeals exercises the powers and duties of the Department with respect to administrative proceedings before the Department, which involve tax assessments; requests for refunds; and denials of tax rebates. 61 Pa. Code §§7.11-7.16. Determinations of the Board of Appeals are appealed to the Board of Finance and Revenue, which is an agency created by Section 501 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §501.

[5] This Court's review of an adjudication of the Board of Finance and Revenue is *de novo*. *Anastasi Brothers Corporation v. Board of Finance and Revenue*, 315 A.2d 267, 270 (Pa. 1974). "Stipulations of fact are binding upon both the parties and the Court." *Kelleher v. Commonwealth*,

4

to an "ordinary trust" that benefit only the settlor's[6] spouse and children qualify for a tax exemption, and transfers to a "living trust" are also excluded from the realty transfer tax. Grantors contend that their Trust meets the definition of a living trust or an ordinary trust and, thus, the real estate transfers were not taxable. Lest there be any doubt, the retroactive modification to the Trust ordered by the Chester County Court of Common Pleas established that the Trust was a living trust as of September 4, 2018, prior to the transfers.

The Commonwealth responds that because Grantors' brief does not comply with the form and content requirements of the Pennsylvania Rules of Appellate Procedure, they have waived all issues and this Court should quash their appeal. In the alternative, the Commonwealth argues that this Court should affirm the determination of the Board of Finance and Revenue because the Department's assessment of the realty transfer tax was based on the Trust as it existed when the deeds were recorded and cannot be nullified by a subsequent amendment to the Trust.

We begin with the threshold issue raised by the Commonwealth that Grantors have waived all issues on appeal because their brief does not comply with the Pennsylvania Rules of Appellate Procedure. The Commonwealth contends that Grantors' brief improperly includes argument in the statement of the case (PA.

---

704 A.2d 729, 731 (Pa. Cmwlth. 1997). "However, the Court may draw its own legal conclusions." *Id*.

[6] A settlor is a person

> who creates or contributes property to a trust. If more than one person creates or contributes property to a trust, each person is a settlor of the portion of the trust property attributable to that person's contribution except to the extent another person has the power to revoke or withdraw that portion.

20 Pa. C.S. §7703. The term "settlor" is synonymous with "grantor," and the terms are often used interchangeably.

R.A.P. 2117(b));[7] does not provide record citations (PA. R.A.P. 2119(c));[8] and does not develop Grantors' legal argument in a fashion that allows for meaningful appellate review (PA. R.A.P. 2119(a)).[9]

More specifically, the Commonwealth complains that the statement of the case in Grantors' brief does not cite to the record, which consists of the Joint Stipulation. Further, because their statement of the case describes the Trust as a "revocable living trust," Grantors have improperly quoted the modification petition filed with the Chester County Court of Common Pleas, which petition is not part of the Joint Stipulation. Commonwealth Brief at 10. Grantors' statement of the case improperly describes the court's order of December 20, 2019, as authorized by statute, but that order does not reference a statute. Finally, the Commonwealth complains that Grantors' brief does not correctly cite Pennsylvania statutes because it uses only the Purdon's, or Westlaw, citation and not the official pamphlet law citation. The Commonwealth contends that in the aggregate these defects have resulted in a failure by Grantors to develop their argument in a meaningful way, which requires that their appeal be quashed.

---

[7] It reads as follows:

> **All argument to be excluded.** The statement of the case does not contain any argument. It is the responsibility of appellant to present in the statement of the case a balanced presentation of the history of the proceedings and the respective contentions of the parties.

PA. R.A.P. 2117(b).

[8] It reads:

> **Reference to record.** If reference is made to the pleadings, evidence . . . or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears[.]

PA. R.A.P. 2119(c).

[9] It reads, in pertinent part, "[t]he argument shall be divided into as many parts as there are questions to be argued[.]" PA. R.A.P. 2119(a).

Grantors' brief explains that their statement of the case "summarize[s]" the Joint Stipulation, which is sufficient in a case where the facts are not in dispute. Grantors' Brief at 2.[10] Grantors' description of the Trust as a "revocable living trust" comes not from the modification petition[11] but directly from the Trust instrument, which is part of the record. Joint Stipulation, Exhibit A, §1.03. Grantors' description of the court's order as one authorized by statute is permissible, notwithstanding the lack of a reference to the statute in the court's order. Finally, although a citation to the Commonwealth's official pamphlet laws is preferred for appellate briefs, the Court is not aware of an appeal ever being quashed for the reason that the petitioner's brief has employed only the Purdon's citation. We reject the Commonwealth's objections to the form and content of Grantors' brief.

In any case, Pennsylvania Rule of Appellate Procedure 2101 is permissive, stating that "the appeal or other matter *may* be quashed or dismissed." PA. R.A.P. 2101 (emphasis added). Indeed, this Court has stated that we "*may ignore even egregious violations* of the Rules of Appellate Procedure if these defects do not preclude meaningful appellate review." *Arnold v. Workers' Compensation Appeal Board (Lacour Painting, Inc.)*, 110 A.3d 1063, 1067 (Pa. Cmwlth. 2015) (internal quotations and citation omitted) (emphasis added). The so-called defects in Grantors' brief claimed by the Commonwealth, singularly or in the aggregate, are not ones with potential to preclude meaningful appellate review.

Accordingly, we reject the Commonwealth's argument that Grantors have waived all issues on appeal. We turn, then, to the merits of Grantors' appeal

---

[10] The Commonwealth's statement of the case portion of its brief also states that it is a "summary of the Stipulation of Facts[.]" Commonwealth Brief at 6.

[11] In any case, a court filing, such as a petition, is not "factual" and need not be part of the evidentiary record in order to be cited.

7

that the Department improperly imposed a realty transfer tax on their real property transfers to the Trust.

We begin with a review of the relevant statutory provisions. Article XI-C of the Tax Reform Code of 1971[12] (Tax Code) creates the realty transfer tax. It states, in pertinent part, as follows:

> Every person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof, or for or in respect of the vellum parchment or paper upon which such document is written or printed, a State tax at the rate of one per cent of the value of the real estate within this Commonwealth represented by such document, which State tax shall be payable at the earlier of the time the document is presented for recording or within thirty days of acceptance of such document[.]

Section 1102-C of the Tax Code, 72 P.S. §8102-C. Article XI-C excludes certain real estate transfers from the tax, including those made to an ordinary trust. Specifically, the tax shall not be imposed upon

> [a] transfer for no or nominal actual consideration to a trustee of an ordinary trust where the *transfer of the same property would be exempt if the transfer was made directly from the grantor to all of the possible beneficiaries* that are entitled to receive the property or proceeds from the sale of the property under the trust, whether or not such beneficiaries are contingent or specifically named . . . .

---

[12] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of May 5, 1981, P.L. 36, 72 P.S. §§8101-C-8114-C. Article XI-C is known commonly as the Pennsylvania Realty Transfer Tax Act.

Section 1102-C.3(8) of the Tax Code, 72 P.S. §8102-C.3(8)[13] (emphasis added). Article XI-C excludes from taxation real estate transfers made "directly" to certain family members. It states that the realty transfer tax shall not be imposed upon

> [*a*] *transfer between husband and wife*, between persons who were previously husband and wife who have since been divorced, provided the property or interest therein subject to such transfer was acquired by the husband and wife or husband or wife prior to the granting of the final decree in divorce, *between parent and child or the spouse of such child*, between a stepparent and a stepchild or the spouse of the stepchild, between brother or sister or spouse of a brother or sister and brother or sister or the spouse of a brother or sister and between a grandparent and grandchild or the spouse of such grandchild, except that a subsequent transfer by the grantee within one year shall be subject to tax as if the grantor were making such transfer.

Section 1102-C.3(6) of the Tax Code, 72 P.S. §8102-C.3(6) (emphasis added). Because a direct transfer of real property to a spouse or child is exempt from taxation, a transfer to an ordinary trust that names those persons as beneficiaries is likewise exempt under Section 1102-C.3(8) of the Tax Code, 72 P.S. §8102-C.3(8).

Article XI-C also excludes from taxation real estate transfers made to a living trust that functions as a will substitute. It states that the realty transfer tax shall not be imposed upon

> [a] transfer for no or nominal actual consideration to a trustee of a living trust from the settlor of the living trust. No such exemption shall be granted unless the recorder of deeds is presented with a copy of the living trust instrument.

Section 1102-C.3(8.1) of the Tax Code, 72 P.S. §8102-C.3(8.1). The Tax Code defines a "living trust" as follows:

---

[13] Section 1102-C.3 was added by the Act of July 2, 1986, P.L. 318, *as amended*.

> Any trust, other than a business trust, intended as a will substitute by the settlor which becomes effective during the lifetime of the settlor, *but from which trust distributions cannot be made to any beneficiaries other than the settlor prior to the death of the settlor.*

Section 1101-C of the Tax Code, 72 P.S. §8101-C (emphasis added).

In sum, the realty transfer tax is generally imposed on all real estate title transfers. Section 1102-C of the Tax Code, 72 P.S. §8102-C. However, this tax cannot be imposed upon the transfer of real property to an ordinary trust or a living trust that names the spouse and children of the trust settlor as beneficiaries. Section 1102-C.3(8), (8.1) of the Tax Code, 72 P.S. §8102-C.3(8), (8.1).

Grantors argue that their property transfers to the Trust were not taxable because they, husband and wife, are the sole beneficiaries of the Trust during their lifetimes. Following their deaths, their children become the remaindermen beneficiaries. Further, their Trust amendment deleted the provision that would have allowed the Trustee to make gifts on behalf of a Grantor who becomes incapacitated. Finally, the Trust amendment expressly prohibits any distribution to any person whose receipt would cause the realty transfer tax to be imposed.

The Commonwealth acknowledges that the amended Trust qualifies as a living trust. However, at the time Grantors recorded the deeds, the Trust allowed the Trustee to "make gifts to charitable organizations," which are not exempt from the real estate transfer tax, should a Grantor become incapacitated. Joint Stipulation, Exhibit A, §5.03(e)(1). Similarly, the Trust provided that

> [o]ur Trustee may distribute as much of the net income and principal of the incapacitated Grantor's trust as our Trustee considers necessary for the health, education, maintenance and support in reasonable comfort of other persons who our Trustee determines are *dependent on the incapacitated Grantor* for support.

10

*Id.*, Exhibit A, §5.03(c) (emphasis added). The Commonwealth argues that the opportunity for the Trustee to make distributions to dependents or charities, on behalf of an incapacitated Grantor, made these potential recipients "beneficiaries" of the Trust. It also argues that the retroactive elimination of those Trust provisions is irrelevant, arguing that Grantors "cannot defeat those assessments by later amending the documents after recordation." Commonwealth Brief at 21.

Title 20 of the Pennsylvania Consolidated Statutes is known and cited as the "Probate, Estates and Fiduciaries Code" (Probate Code). 20 Pa. C.S. §101.[14] In 2006, the Probate Code, 20 Pa. C.S. §§7701-7799.3, was revised to incorporate the amendments to the Uniform Trust Code (UTC) adopted by the National Conference of Commissioners on Uniform State Laws. One such amendment to the UTC was Section 416, entitled "Modification to Achieve Settlor's Tax Objectives." It states:

> To achieve the settlor's tax objectives, the court may modify the terms of a trust in a manner that is not contrary to the settlor's probable intention. The court may provide that the modification has retroactive effect.

Unif. Tr. Code §416 (Unif. L. Comm'n 2000). The comment to Section 416 states as follows:

> This section is copied from Restatement (Third) of Property: Donative Transfers §12.2 (Tentative Draft No. 1, approved 1995). "Modification" under this section is to be distinguished from the "reformation" authorized by Section 415. Reformation under Section 415 is available when the terms of a trust fail to reflect the donor's original, particularized intention. The mistaken terms are then reformed to conform to this specific intent. *The modification authorized here allows the terms of the trust to be changed to meet the settlor's tax-saving objective as*

---

[14] This title was consolidated by the Act of June 30, 1972, P.L. 508.

*long as the resulting terms, particularly the dispositive provisions, are not inconsistent with the settlor's probable intent.* The modification allowed by this subsection is similar in concept to the cy pres doctrine for charitable trusts (*see* Section 413), and the deviation doctrine for unanticipated circumstances (*see* Section 412).

*Whether a modification made by the court under this section will be recognized under federal tax law is a matter of federal law.* Absent specific statutory or regulatory authority, binding recognition is normally given only to modifications made prior to the taxing event, *for example, the death of the testator or settlor in the case of the federal estate tax. See* Rev. Rul. 73-142, 1973-1 C.B. 405. Among the specific modifications authorized by the Internal Revenue Code or Service include the revision of split-interest trusts to qualify for the charitable deduction, modification of a trust for a noncitizen spouse to become eligible as a qualified domestic trust, and the splitting of a trust to utilize better the exemption from generation-skipping tax.

For further discussion of the rule of this section and the relevant case law, *see* Restatement (Third) of Property: Donative Transfers §12.2 cmts. and Reporter's Notes (Tentative Draft No. 1, approved 1995).

Unif. Tr. Code §416 cmt. (emphasis added).

The Pennsylvania General Assembly adopted a nearly identical version of Section 416 of the UTC. The Probate Code states as follows:

§7740.6    Modification to achieve settlor's tax objectives – UTC 416

The court may modify a trust instrument in a manner that is not contrary to the settlor's probable intention in order to achieve the settlor's tax objectives. The court may provide that the modification have retroactive effect.

20 Pa. C.S. §7740.6.[15]  The only difference between Section 416 of the UTC and Section 7740.6 of the Probate Code is the placement of the phrase "in order to achieve the settlor's tax objectives" in the first sentence.

The Commonwealth argues that Section 7740.6 allows a court to modify a trust only with respect to a tax not yet assessed.  It argues that "the comments to the relevant statute state 'binding recognition is normally given only to modifications made prior to the taxing event.'"  Commonwealth Brief at 22 (citing 20 Pa. C.S. §7740.6 and quoting "Uniform Law Comment" appended to Westlaw version of 20 Pa. C.S. §7740.6).  On the basis of this above-quoted phrase from the Comment to Section 416 of the UTC, the Commonwealth argues that the retroactive modification to the Trust ordered by the Chester County Court of Common Pleas was not effective with respect to Grantors' transfer of real property to the Trust.  We reject this argument for several reasons.

First, the Commonwealth's argument is based upon a flawed construction of the second paragraph of the UTC Comment, which paragraph is concerned solely with federal taxation.  Its topic sentence states that "[w]hether a modification made by the court under this section will be *recognized under federal tax law is a matter of federal law*."  Unif. Tr. Code §416 cmt., ¶2 (emphasis added).  The following sentences develop this topic.  The second sentence states that "binding recognition is normally given only to modifications made prior to the taxing event, for example, the death of the testator or settlor *in the case of the federal estate tax*."  *Id*. (emphasis added).  The final sentence lists trust modifications that have been recognized by the Internal Revenue Code or Service.

---

[15] Subchapter A through I of Chapter 77 of the Probate Code "shall be known and may be cited as the Uniform Trust Act."  20 Pa. C.S. §7701.

The Commonwealth characterizes paragraph two as "comments to the relevant statute." Commonwealth Brief at 22. However, it is not a comment to the Probate Code but, rather, to the UTC. The Commonwealth then edits paragraph two of the UTC Comment to delete any reference to federal tax law. *Id.* This legerdemain changes the entire meaning of the UTC Comment. Under our system of dual sovereignty, federal taxing authorities "normally" will not be bound by a state statute or order issued thereunder. It goes without saying that a state statute, such as the Probate Code, has effect only within the state's borders and cannot speak to matters governed by federal statute. Nowhere, however, does the Comment to Section 416 of the UTC state that a court order that modifies a trust with "retroactive effect" will not be afforded "binding recognition" under state tax law.

Second, and more problematic, the Commonwealth reads its edited version of the Comment into the language of Section 7740.6. This is antithetical to our task in any statutory construction exercise. As our Supreme Court has stated:

> The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statute. In general, the best indication of legislative intent is the plain language of a statute. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Words of a statute are to be construed according to their common and approved usage.

*Sivick v. State Ethics Commission*, 238 A.3d 1250, 1259 (Pa. 2020) (footnote omitted). "It is axiomatic that we cannot add statutory language where we find the extant language somehow lacking[.]" *Id.* at 1264. The extant language of Section 7740.6 says nothing about a "taxing event," whether state or federal in nature, and we cannot add that phrase to the provision. To the contrary, we must assume that any reference to a "taxing event" was intentionally omitted from the text of Section

14

7740.6. *See In re Canvassing Observation*, 241 A.3d 339, 349 (Pa. 2020) ("[W]hen interpreting a statute we must listen attentively to what the statute says, but also to what it does not say.") (internal citation omitted).

Third, Comments to the UTC have limited efficacy in the construction of Chapter 77 of the Probate Code. Our Supreme Court has explained:

> The purpose of statutory interpretation is to ascertain the General Assembly's intent and to give it effect. In discerning that intent, courts first look to the language of the statute itself. *If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning.* Courts may apply the rules of statutory construction only when the statutory language is not explicit or is ambiguous.

*Trust Under Agreement of Taylor*, 164 A.3d 1147, 1155 (Pa. 2017) (internal citations omitted) (emphasis added). Our Supreme Court has further stated:

> The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, *but the text of the statute shall control in the event of conflict between its text and such comments or report.*

*Id*. at 1159 (quoting 1 Pa. C.S. §1939) (emphasis added).

In the matter *sub judice*, we are concerned with two statutes, the Tax Code and the Probate Code. Because each statute addresses the subject of taxation and trusts, they are *in pari materia*. *See* Section 1932(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1932(a) ("[S]tatutes . . . are in pari materia when they relate to the same persons or things[.]") Statutes that are "in pari materia shall be construed together, if possible, as one statute." 1 Pa. C.S. §1932(b). The

15

Tax Code exempts transfers to a living trust from the realty transfer tax, and the Probate Code authorizes a court to modify a living trust, retroactively, in order to achieve a settlor's tax objectives. *See* Section 1102-C.3(8.1) of the Tax Code, 72 P.S. §8102-C.3(8.1); 20 Pa. C.S. §7740.6. The two statutes can, and must, be read together as a single statute.

There is no need to resort to the UTC or its Comments because there is no ambiguity to resolve. To the extent there is any conflict, it lies between the Commonwealth's recasting of paragraph two of the UTC Comment, which is mistaken at best, and Section 7740.6 of the Probate Code.

The Commonwealth does not offer any construction of "retroactive effect" of a trust modification "in order to achieve the settlor's tax objectives." 20 Pa. C.S. §7740.6. Instead, it leaps to the Comment to Section 416 of the UTC, which it edits to suit its purpose. In this way, the Commonwealth construes Section 7740.6 as limiting the effect of the trust modification to tax assessments that take place in the future, post-modification. This reads "retroactive effect" out of the Probate Code.

The Commonwealth also directs this Court to our decision in *Sabatine v. Commonwealth*, 398 A.2d 741 (Pa. Cmwlth. 1979) *aff'd on other grounds*, 442 A.2d 210 (Pa. 1981). That case concerned a transfer of real property from Madden to Sabatine, for which a realty transfer tax in the amount of $5,510.48 was paid. Subsequently, Sabatine filed a suit in equity to set aside the conveyance and to have the deed declared void because of Madden's misrepresentations and a mutual mistake of fact. The parties settled the litigation with a court-approved consent decree that nullified the transfer. Thereafter, Madden and Sabatine filed a petition for a refund of the realty transfer tax, which was denied. On appeal, our Court

affirmed the Board of Finance and Revenue's adjudication, explaining that the county court

> had no jurisdiction over the Commonwealth or the subject matter of the realty transfer tax when the consent decree was entered. While a consent decree is as binding upon the parties as a final decree after a trial on the merits . . . it has no effect upon parties or subject matter beyond the Court's jurisdiction.

*Sabatine*, 398 A.2d at 742-43. On appeal, the Supreme Court affirmed this Court, but on other grounds. *Sabatine*, 442 A.2d 210.

The Commonwealth argues that, as in *Sabatine*, the Department was not a party to the court proceeding that approved the Trust amendment retroactive to September 4, 2018, and, thus, the court's jurisdiction was limited. It believes that *Sabatine* requires this Court to affirm the Board of Finance and Revenue.

*Sabatine* is distinguishable. First, the order of the Chester County Court of Common Pleas to modify the Trust with a retroactive effective date was done under authority of state statute. By contrast, *Sabatine* concerned litigation brought under common law.[16] Second, Section 7740.6 of the Probate Code expressly authorizes a court of common pleas to order a trust modification with a "retroactive effect" where it will "achieve the settlor's tax objectives." 20 Pa. C.S. §7740.6.[17]

---

[16] In *M6 Realty LLC, a New Jersey Limited Liability Company v. Commonwealth* (Pa. Cmwlth., No. 797 F.R. 2017, filed August 4, 2021), the petitioner asserted that it was the "holder of a bona fide mortgage in default in lieu of a foreclosure" and entitled to a realty transfer tax exemption. 72 P.S. §8102-C.3(1a). This Court held that because another party held the mortgage on the date the deed was recorded, the petitioner could not claim the exemption. *M6 Realty* stands for the principle that the operative documents are evaluated as of the date of transfer, not on the basis of documents executed and dated several days later. *M6 Realty* is distinguishable. Here, a state statute authorized the court to order the operative document modified with an effective date prior to the deeds' filing "in order to achieve the settlor's tax objectives." 20 Pa. C.S. §7740.6.

[17] As noted by Grantors, a tax of 4.5% will be imposed on the value of the inheritance received by the remainderman beneficiaries, after the death of Grantors. Section 2116(a)(1)(i) of the Tax Code,

The Department, an executive branch agency, cannot disregard a judicial order issued under authority of the Probate Code.[18] Third, *Sabatine* does not stand for the broad proposition that the Commonwealth must be a party to any court proceeding that may have a tax consequence. In any case, the Supreme Court did not follow this Court's analysis on jurisdiction. *See Sabatine*, 442 A.2d at 212. We reject the Commonwealth's argument that *Sabatine* is dispositive.

Without any limitations, Section 7740.6 of the Probate Code allows a court to order a retroactive modification to a trust in order "to achieve the settlor's tax objectives" so long as it aligns with the settlor's "probable intention." 20 Pa. C.S. §7740.6.[19] Without question, that is the case here. The Statements of Value filed by Grantors with the recorder of deeds demonstrate the settlors' tax objective, and the Trust amendment established their "probable intention." Consistent with Section 7740.6, the court's order has established the terms of the Trust as of September 4, 2018.

---

added by the Act of August 4, 1991, P.L. 97, 72 P.S. §9116(a)(1)(i). That tax exceeds the realty transfer tax rate. Grantors' Brief at 9, n.4.

[18] *See generally McCray v. Pennsylvania Department of Corrections*, 872 A.2d 1127, 1133 (Pa. 2005) ("The Department [of Corrections] is an executive branch agency that is charged with faithfully implementing sentences imposed by the courts. As part of the executive branch, the Department lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions."). The Department of Revenue, likewise, lacks the power to add or delete provisions of a trust that have been established by an order of the court of common pleas under authority of the Probate Code.

[19] "Probable intention" considers the settlor's "non-tax as well as tax objectives." Restatement (Third) of Property, Donative Transfers §12.2, Comment f (Am. Law Inst. 1999). Here, Grantors jointly amended the Trust, so there can be no question of their probable intention. The Restatement also provides that the settlor's tax objectives can be inferred from the donative document or from extrinsic evidence, and the settlor's tax objective can be specific, as to a particular tax, or general, such as an objective to minimize taxes. *Id*., Comment c. Here, the Statements of Value establish "the settlor's tax objectives." 20 Pa. C.S. §7740.6.

The Commonwealth acknowledges that the amended Trust now meets the Tax Code definition of a living trust.[20] As a result of the court order entered under Section 7740.6 of the Probate Code, the Trust existed as a living trust on September 4, 2018, prior to the January 10, 2019, property transfers to the Trust. Accordingly, those transfers are excluded from the realty transfer tax, and the Board of Finance and Revenue erred in denying Grantors' petition for a redetermination of the Department's assessment of realty transfer taxes for the January 2019 transfers to the Trust.

Based on the foregoing analysis, we reverse the determination of the Board of Finance and Revenue. Because Grantors' conveyance of three parcels of real property to the Trust was not subject to the realty transfer tax, their petition for a tax assessment redetermination should have been granted.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[20] Because of our disposition of this appeal, we do not address the question of whether the Trust meets the definition of a living trust or an ordinary trust, with or without the modification. The Commonwealth argues that under the erstwhile incapacity provision, the potential for a distribution to a person other than a Grantor, even if made on behalf of an incapacitated Grantor, made that person a beneficiary of the "living trust." *See* Section 1101-C of the Tax Code, 72 P.S. §8101-C (defining "Living trust"). If the definition of living trust is read literally, then a payment to an accountant or attorney, whose services have been engaged by the Trust, would make the accountant or lawyer a "beneficiary." For their part, Grantors argue that the Trust qualifies for the ordinary trust tax exclusion because the only beneficiaries named in the trust instrument are the settlor's spouse or child. Section 1102-C.3(6) of the Tax Code, 72 P.S. §8102-C.3(6).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bernard W. Ebersole and Jennifer   :
Matlack,                               :
                   Petitioners  :
                                  :
        v.                 :    No. 360 F.R. 2020
                                  :
Commonwealth of Pennsylvania,  :
                 Respondent :

## **O R D E R**

AND NOW, this 10th day of October, 2023, the June 25, 2020, order of the Board of Finance and Revenue, in the above-captioned matter, is REVERSED. This matter is remanded to the Board of Finance and Revenue for further remand to the Department of Revenue for action on the petitions for redetermination filed by Bernard W. Ebersole and Jennifer Matlack that is consistent with the attached Opinion. Unless exceptions are filed within thirty (30) days pursuant to PA. R.A.P. 1571(i), this Order shall become final.

_____
MARY HANNAH LEAVITT, President Judge Emerita